**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ESTHER COLENE O'NEILL,**

                        **Plaintiff,**

            **v.**                                           **5:05-CV-188**
                                                             **(FJS/GHL)**

**UNITED STATES OF AMERICA,**

                        **Defendant/**
                        **Third-Party Plaintiff,**

            **v.**

**STATE OF NEW YORK,**

                        **Third-Party Defendant.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**ROTHSCHILD LAW FIRM**                 **MARTIN J. ROTHSCHILD, ESQ.**
5781 Bridge Street, Suite 33
East Syracuse, New York 13057
Attorneys for Plaintiff

**OFFICE OF THE UNITED**              **WILLIAM F. LARKIN, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
& United States Courthouse
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant/Third-Party
Plaintiff

**OFFICE OF THE NEW YORK**           **SENTA B. SIUDA, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West, Suite 102
Syracuse, New York
Attorneys for Third-Party Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

Plaintiff asserts a negligence claim under the Federal Tort Claims Act, alleging that the step-down on the pier where she fell constituted a "hazardous, defective and out of repair condition . . . affirmatively created by the [D]efendant . . . and had existed for such an extended period of time that the [D]efendant knew or with reasonable inspection should have known of it." *See* Complaint at ¶ 7.[1] Specifically, Plaintiff alleges that, on June 15, 2003, due to Defendant's negligence, she fell and sustained injuries to her left leg and left ankle at one of the step-downs on the east pier, which was approximately four or five inches in height and not demarcated by a change in the pier's color or composition.

Defendant owns a breakwater and two piers along the shoreline of state-owned Fair Haven Beach Park in Little Sodus Bay Harbor, New York. Defendant constructed the east pier and its walking surface, where Plaintiff fell, so that it had height variations which required walkers to step up and down.

The Court held a bench trial to resolve this matter on December 4, 2007. At that trial, the following people testified: (1) Victor Kotwicki, United States Army Corps of Engineers, Chief of the Real Estate Division for the Detroit, Buffalo and Chicago Districts; (2) William Townsend, Retired Supervisory Civil Engineer for the United States Army Corps of Engineers; (3) Joseph Keeler, Park Manager at Fairhaven Beach State Park; (4) Erin Hill, Plaintiff's daughter; and (5)

---

[1] Defendant filed a third-party complaint against the State of New York, asserting a right to indemnity or contribution arising out of their lease. Additionally, Defendant asserted that the lease required the State of New York to obtain an insurance policy covering injuries on the pier.

Plaintiff.

The following constitute the Court's findings of facts and conclusions of law as Rule 52(a) of the Federal Rules of Civil Procedure requires.

## II. DISCUSSION

**A.     Findings of fact**

1. The Secretary of the United States Army and the State of New York Office of Parks, Recreation, and Historic Preservation entered into a Park and Recreation Lease for the Fairhaven Beach State Park at Little Sodus Bay on May 2, 2002.

2. There is an East Pier, a West Pier, and an East Breakwater attached to the East Pier at Little Sodus Bay.  The East Breakwater is 1,600 feet long.  The East Pier is 1,810 feet long.  The East Pier is approximately twenty-two feet wide.

3. The configuration of the East Pier was the same in 2003 as it was in 1974.

4. There are a number of elevation changes on the East Pier as you go out from the beginning.  The elevations are approximately the same height, between 6/10s and 9/10s of a foot, which is the average height of a step.

5. The changes in elevation are not due to deterioration; the steps were designed that way.

6. During the time that Mr. Keeler was the Park Manager at Fairhaven Beach State Park, he was not aware of any falls, other than Plaintiff's, on the pier.

7. Approximately 40,000 people walk on the pier in any given year.

8. Where Plaintiff fell, there was a step-down or drop-off, and there were no signs indicating that there was such a step-down or drop-off.

9. Plaintiff had walked in the same area where she fell once a year between 1992 and 2003 and had seen the height differentials, although she did not pay much attention to them.

10. The conditions and surface of the pier were the same for all the years that Plaintiff had walked on the pier prior to her accident.

11. The place on the pier where Plaintiff fell appeared flat to her.

12. Plaintiff was carrying her daughter's foster son, Christopher, and was looking straight ahead when she fell.

13. Plaintiff came down hard on her left ankle, twisting it and dropping down to her knees and forearms to protect Christopher from falling.

14. Plaintiff's ankle was very swollen and painful as a result of the fall.

15. Plaintiff's husband went to the pier the day after she fell and took pictures to document the conditions.

16. Plaintiff had an x-ray of her ankle taken the day after she fell, which showed that her ankle was fractured.

17. Plaintiff had sprained the same ankle several years prior to her fall on June 15, 2003.

18. Plaintiff wore a hard cast and then a soft cast to help her ankle heal.

19. The doctor prescribed physical therapy for Plaintiff.

20. Plaintiff attended physical therapy for about four weeks; and, during the last two visits, she did not have any left ankle pain.

21. Plaintiff has had to limit her activities because of the injury to her ankle.

**B.     Conclusions of law**

"A landowner 'must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk . . . .'" *Cupo v. Karfunkel*, 1 A.D.3d 48, 51 (2d Dep't 2003) (quoting *Peralta v. Henriquez*, 100 NY2d 139, 144 [2003], quoting *Basso v. Miller*, 40 NY2d 233, 241 [1976]).  Moreover, although the trier of fact "'determines whether and to what extent a particular duty was breached, it is for the court first to determine whether any duty exists, taking into consideration the reasonable expectations of the parties and society generally.  The scope of any such duty of care varies with the foreseeability of the possible harm . . . .'" *Id.* (quoting *Tagle v. Jakob*, 97 NY2d 165, 168 [2001]).

The landowner's duty to maintain its property in a reasonably safe condition also includes the duty to warm of a dangerous condition.  *See id.*  Nonetheless, "a landowner has no duty to warn of an open and obvious danger . . . [because,] [u]nless a hazard is latent, a person entering the property is just as aware as the landowner of the condition of the property and the risks associated with it . . . ."  *Id.* (internal citation omitted).

It is the plaintiff's burden to demonstrate that a dangerous condition exists on the property.  *See id.* at 52.  If the plaintiff meets this burden, then "the burden shifts to the landowner to demonstrate that [it] . . . exercised reasonable care under the circumstances to remedy the condition and to make the property safe, based on such factors as the likelihood of injury to those entering the property and the burden of avoiding the risk."  *Id.*  However, "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition but is relevant to the issue

of the plaintiff's comparative negligence." *Id.*

Nevertheless, as the court stated in *Cupo*, "[i]n holding that the open and obvious nature of a condition is relevant to the issue of the plaintiff's comparative negligence, we emphasize that this will be an issue ***only*** in cases where it can reasonably be argued that a dangerous condition existed on the property which the landowner was under a duty to remedy." *Id.* (emphasis added). Thus, a finding of no liability on the part of the landowner is appropriate "on the ground that the condition complained of by the plaintiff was both open and obvious *and, as a matter of law, was not inherently dangerous . . . .*" *Id.* (citing *Gibbons v. Lido & Point Lookout Fire Dist.*, 293 AD2d 646 [2002] [cement parking block on floor of a firehouse]; *Connor v. Taylor Rental Ctr.*, 278 AD2d 270 [2000] [forklift in a marked stall in a parking lot]; *Plessias v. Scalia Home for Funerals*, 271 AD2d 423 [2000] [concrete parking divider]; *Maravalli v. Home Depot U.S.A.*, 266 AD2d 437 [1999] [sink vanity on the floor of the store aisle]). Under these circumstances, the *Cupo* court found that "the condition which caused the accident cannot fairly be attributed to any negligent maintenance of the property." *Id.*

In the present case, the undisputed evidence demonstrates that the step-ups and step-downs were part of the construction of the pier and were not due either to deterioration in the surface of the pier or to any failure of Defendant to maintain the pier properly. Moreover, although Plaintiff and her daughter testified that they did not see the step-down where Plaintiff fell, this testimony is incredible in light of the fact that both Plaintiff and her daughter testified that they had walked on this pier many times, had never had any problems with the surface, and were aware that there were step-ups and step-downs all along the length of the pier. In addition, Mr. Townsend testified that these step-ups and step-downs had existed on the pier for a number

of years prior to the accident, and Mr. Keeler testified that he was aware of no other incidents of people falling on the pier.

Based on all of this evidence, the Court finds that the step-down where Plaintiff fell was both open and obvious and, as a matter of law, was not inherently dangerous. Furthermore, the Court concludes that the condition that caused Plaintiff's accident is not fairly attributable to any negligent maintenance of the pier and that, therefore, Defendant did not breach any duty to Plaintiff and is not liable for her injuries.

### III. CONCLUSION

After carefully reviewing all of the evidence adduced at trial and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.[2]

**IT IS SO ORDERED.**

Dated: February 19, 2009
      Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] The Court notes that, because Defendant is not liable for Plaintiff's injuries, Defendant's claim for indemnification or contribution against Third-Party Defendant State of New York is moot.